BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI (NY 6112429)
TIBERIUS DAVIS (DC 90020605
Counsel to the Assistant Attorney General

ALESSANDRA FASO (IL 6326883)
Senior Litigation Counsel

ALEXANDRA SCHULTE (CA 290664)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 718-0483
alexandra.schulte@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF OREGON; TINA KOTEK, Governor of Oregon, in her official capacity; JULIE BROWN, Chair, Oregon Transportation Commission, in her official capacity; AMY JOYCE, DMV Administrator, in her official capacity.<br><br>Defendants. | **COMPLAINT**<br><br><br>Case No.:  3:26-cv-1060 |

Page 1  Complaint of the United States

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1.      Federal law enforcement agencies operate throughout the United States enforcing federal law, including the immigration laws in Title 8. Their jobs are dangerous as they frequently investigate and apprehend violent criminals including cartel members, gang members, sex offenders, human traffickers, and other violent offenders. These brave agents, like their local counterparts, rely on various tools and techniques to stay safe while performing their official duties, including taking certain measures to keep their activities and identities unknown to the general public and the criminals they investigate. One such tool is confidential license plates that cannot easily be tied back to their agencies through records requests or other means.

2.      Since President Donald J. Trump took office for the second time in January 2025, some states have tried to obstruct the Federal Government's immigration enforcement efforts, even though control over immigration and the nation's borders is an exclusive federal power. Oregon is one of those states. Oregon has issued confidential license plates to Federal law enforcement agencies for many years, but is now refusing to issue them to any federal agencies at all, claiming it must reevaluate its policy. Yet it continues to issue confidential plates to state and local law enforcement agencies. Oregon even refuses to issue standard registrations to Federal vehicles, instead insisting that those vehicles bear U.S. Government plates. This unwarranted halt in the issuance of license plates and registrations is discriminatory and a blatant violation of the intergovernmental immunity doctrine embodied within the Supremacy Clause. The policy must be declared unconstitutional and invalid, and it must be enjoined.

Page 2  Complaint of the United States

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

4.      Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

5.      The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

6.      Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI), the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

7.      Defendant Oregon is a state of the United States.

8.      Defendant Tina Kotek is the Governor of Oregon and is being sued in her official capacity.

9.      Defendant Julie Brown is the Chair of the Oregon Transportation Commission, which oversees the Oregon Department of Motor Vehicles ("DMV"), and is being sued in her official capacity.

10.     Defendant Amy Joyce is the Administrator of the Oregon DMV and is being sued in her official capacity.

Page 3  Complaint of the United States

**LEGAL AND FACTUAL BACKGROUND**

**THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT**

11.    The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

12.    The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

13.    Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

14.    Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states, including Oregon.

15.    For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act (CSA), *codified as amended* at 21 U.S.C. §§ 801, *et seq*.

16.    In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug

trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100-0.101.[1]

17.    As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[2]

18.    And as another example, DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012). In the wake of the terrorist attacks of September 11, 2001, the FBI was granted civil immigration authority in December 2002 by order of the Attorney General pursuant to 8 U.S.C. § 1103. In January 2025, DHS, also pursuant to 8 U.S.C. § 1103, gave that same authority to other DOJ components, including USMS, DEA, and ATF.

19.    The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking.  *See* 8 U.S.C. §§ 1324, 1232.

---

[1] *See also* DEA, Mission Statement, https://perma.cc/99W4-98GL (last visited May 18, 2026).
[2] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited May 18, 2026).

**OREGON'S DRIVER AND MOTOR VEHICLE SERVICES DIVISION'S POLICY**

20.    The Oregon Department of Transportation ("DOT"), through its DMV is responsible for issuing license plates and registrations within the state. Under Oregon law, the DOT is permitted to issue undercover or confidential plates to "federal, state, county, city or Indian tribal law enforcement."  Or. Rev. Stat. Ann. § 805.060(a).

21.    Consistent with that law, for many years, Oregon's DMV issued confidential plates and registrations to both state and federal law enforcement vehicles for any purpose, including vehicles owned by federal agencies such as FBI, DEA, ATF, CBP, ICE, and HSI.

22.    That changed in April 2026 when the Oregon DMV suddenly reversed course. Even though its law allows issuance of confidential plates and registrations to federal law enforcement, Oregon paused issuance of confidential plates and registrations to all federal agencies. Oregon publicly confirmed that the pause affected federal agencies only and "[s]tate and local law enforcement are unaffected by this pause."[3]

23.    Although Oregon claims the pause is temporary in order to assess compliance with state law, it has given no date certain for when it will resume issuance of confidential license plates for federal agencies. It is not apparent why this has already taken nearly 2 months. Nor is it apparent why Oregon needed to suspend all confidential plates for federal law enforcement based on law that explicitly allows such plates for criminal investigations. Nor does it make sense that Oregon has provided confidential plates to all federal law enforcement for decades yet only now claims to be concerned about alleged compliance with its own laws.

---

[3] Nanungeri, "Oregon DMV review of undercover plates sparks clash with federal immigration enforcement," Central Oregon Daily News (May 18, 2026), *available at* https://www.centraloregondaily.com/news/regional/oregon-undercover-license-plates-federal-agencies-trump/article_264f7369-7751-4db4-8570-834175b6729c.html (last visited May 26, 2026)

Page 6  Complaint of the United States

24.     By singling out federal agencies for a pause in issuing confidential license plates and registrations, while continuing to issue them to state and local agencies, Oregon is unlawfully discriminating against the Federal Government by treating state and local agencies better than it treats Federal agencies.

25.     Oregon is further discriminating against the Federal Government by refusing to issue any plates or registrations to federal agencies at all, even regular registrations that are not confidential pursuant to Or. Rev. Stat. Ann. § 803.310, instead taking the position that Federal Government vehicles can bear U.S. Government plates.

26.     By telling federal officers to use plates that conspicuously identify them as federal officers, Oregon is also impermissibly regulating federal law enforcement. Oregon is telling federal officers to identify themselves as distinct from even the general public *because* they are federal officers.

27.     Even if Oregon begins reissuing plates to federal officers engaged in criminal investigations under Or. Rev. Stat. Ann. § 805.060(a), but not those engaged in civil immigration enforcement, that would still be discriminatory. This is because the purpose and effect of this policy change would be to single out federal law enforcement. There is no meaningful distinction between state and local officers engaged in routine criminal enforcement and federal officers engaged in civil immigration enforcement for the purposes of confidential plates. Both may require confidential operations.

28.     By preventing federal law enforcement from getting confidential plates for civil immigration enforcement, Oregon is attempting to regulate how federal officers carry out their congressional mandated enforcement duties. Criminal law enforcement operations may be

conducted confidentially, but Oregon will not allow federal civil immigration enforcement to use the same valuable tools.

## OREGON'S DRIVER AND MOTOR VEHICLE SERVICES DIVISION'S POLICY HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC

29.    The United States has standing to bring this lawsuit where it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[,]" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and the Oregon DMV's policy violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Oregon (or any state) by abiding by its dangerous policy which jeopardizes federal law enforcement operations and the officers who carry them out. A favorable ruling would redress these harms.

30.    Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, compliance with the DMV policy endangers officers and reduce operational effectiveness.

31.    Federal law enforcement agencies should not be subject to the challenged DMV policy, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

32.    The Oregon DMV's policy poses detrimental impacts upon investigations and public safety by jeopardizing ongoing investigations that rely on discreet surveillance and inconspicuous movement.

33.    When an unmarked vehicle can be traced to a federal agency, the negative consequences for federal law enforcement officers can be immediate. Federal officers rely on confidential plates to investigate, monitor, and apprehend targets. They help officers avoid confrontations and evasion by those targets or other members of the public. Taking away those plates requires officers to use public, consistent, and traceable plates. As a result, enforcement targets can sometimes track and evade law enforcement. Members of the public can also use this information to follow and impede law enforcement operations.

34.    In the event an investigative vehicle is identified because confidential plates were not issued, subjects may destroy evidence, evade apprehension, flee the jurisdiction, take countermeasures that endanger the public, or otherwise alter their behavior.

35.    Such risks stemming from the State's confidential plate policy are especially acute in drug trafficking, firearms trafficking, fraud, abduction, and missing child investigations. These sensitive investigations involve undercover meetings, controlled buys, and covert monitoring, where confidentiality is essential.

36.    The inability to obtain confidential registrations and license plates disrupts a multitude of mission sets that require operational anonymity, including fugitive investigations, sex offender investigations, firearms trafficking investigations, threat assessments, protective intelligence, surveillance operations, undercover operations, task force operations, missing person and missing child cases, abduction investigations, fraud investigations, drug investigations, counterterrorism operations, and state and local collaborative operations.

37.    Without confidential registrations and license plates, federal agencies may be forced to modify, delay, or forego operations, increasing risks to federal law enforcement officers and the communities they serve.

38.    Worse yet, the Oregon DMV has suggested that federal vehicles need not register with Oregon, leaving federal officers to use conspicuous U.S. Government plates. That would make it even easier to identify, trace, and evade federal officers than even normal public plates. There is no justification for this.

39.    The Oregon DMV policy thus not only seeks to regulate how federal officers carry out their duties, but it does so to the detriment of the officers and the public.

40.    Federal law enforcement routinely transports government officials, federal judges, prisoners, and witnesses.

41.    If such vehicles can be identified as federal, hostile actors may track routes, anticipate movements, or attempt to interfere. This undermines layered security protocols and exposes protected individuals to unnecessary danger.

42.    Confidential registrations also ensure that the Oregon DMV remains the custodian of sensitive ownership information, meaning only authorized individuals may access these records.

43.    Protecting the identities of federal officers is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs.[4] While such threats have always existed, they have increased exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

44.    Increasingly, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole

---

[4] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ

purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.[5]

45.    For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info. Once a match is made, they often search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement.

46.    This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field. These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[6] ICE officers are facing an 8,000% increase in death threats and more than a 1,000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them.[7] Harassment and assault is not limited to immigration officers and agents; other federal agents including those from FBI, DEA, and ATF, have been targeted for simply doing their jobs.

47.    Stripping federal agencies of the ability to remain confidential eliminates this safeguard and increases the risk that criminal actors or hostile organizations could obtain sensitive information.

48.    Moreover, it is in the public interest to enjoin the Oregon DMV policy where state and local agencies routinely rely on federal partners for specialized resources, personnel, and

---

[5] *See, e.g.,* https://www.dhs.gov/news/2026/03/31/anti-ice-agitator-doxxes-ice-officer-north-carolina
[6] https://www.dhs.gov/news/2025/10/14/bounties-originating-mexico-offered-shoot-ice-and-cbp-officers-chicago.
[7] *See supra* note 2.

Page 11  Complaint of the United States

operational support, especially during high-risk or large-scale incidents. Compromising the anonymity of federal vehicles reduces the effectiveness of this support and limits the ability of federal agencies to respond quickly and safely when state and local partners request assistance.

49.    Confidential vehicle registrations are a critical component of safe, effective, and lawful federal law enforcement operations.

50.    Oregon clearly understands that these plates can be crucial to law enforcement, which is why it offers them to state and local law enforcement and until recently provided them to *all* federal agents as well. By boldly stripping this important tool away from federal officers, Oregon has undermined those officers' ability to safely and effectively enforce the law.

51.    The Oregon DMV policy introduces substantial, unnecessary, and entirely preventable risks. It undermines federal security safeguards, conflicts with congressional intent, and weakens Oregon's broader public safety posture.

52.    The United States is irreparably harmed by laws that violate the Supremacy Clause by regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions, such as federal civil immigration enforcement. Further, the policy is newly issued and has been enforced for over a month with no end date.

53.    There is no other adequate remedy at law.

54.    The public interest favors maintaining our system of federalism and the constitutional lines drawn between federal and state power and enabling the Federal Government to carry out its functions as mandated by the Constitution and Congress.

55.    The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

Page 12  Complaint of the United States

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE SUPREMACY CLAUSE

### (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

56.    Plaintiff hereby incorporates paragraphs 1 through 55 of this Complaint as if fully stated herein.

57.    Oregon's policy of refusing to issue confidential license plates and registrations to federal agencies discriminates against the Federal Government.

58.    This policy treats federal agencies differently because state and local law enforcement agencies continue to obtain undercover registrations and plates.

59.    Oregon's alleged explanation that it is re-evaluating its long-standing policy to ensure compliance with Oregon law is irrelevant. Even if Oregon were to refuse to issue license plates (confidential or regular) to federal officers engaged in civil immigration enforcement, it would still be discriminatory because the effect and intent is to prevent only federal immigration authorities from using confidential plates.

60.    Accordingly, Oregon's DMV policy illegally discriminates against the United States, violates the Supremacy clause, and is unconstitutional.

### COUNT II

### VIOLATION OF THE SUPREMACY CLAUSE

### (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

61.    Plaintiff hereby incorporates paragraphs 1 through 55 of this Complaint as if fully stated herein.

Page 13  Complaint of the United States

62.     Oregon's confidential plate policy constitutes an unlawful regulation of the Federal Government.

63.     Oregon understands the benefits of confidential plates to law enforcement. Indeed, until recently it provided confidential plates to all federal agencies regardless of the type of enforcement they were engaged in.

64.     Yet now Oregon DMV's policy denies any plates, confidential or otherwise, to all federal agencies, despite Oregon law to the contrary. The DMV claims federal agencies do not need to register their vehicles in Oregon.  But if those agencies instead use conspicuous U.S. Government plates, that will readily identify them as federal agents.

65.     Oregon's policy to deny both confidential and standard plates to federal agencies and telling them to use U.S. Government plates does not simply set a general condition to operate a vehicle in the state, instead it directly regulates a core government function by telling federal law enforcement that they must publicly identify themselves as federal agents rather than display a general public license. This is no different than forcing undercover officers to wear giant badges saying "Fed."

66.     Even if Oregon were to begin issuing confidential plates to some federal law enforcement but not for civil immigration, Oregon would still be regulating a core federal function by telling federal agencies they cannot enforce certain laws if they want an otherwise available confidential plate.

67.     By setting this condition, Oregon seeks to regulate the Federal Government by dictating how the federal agents may do their jobs in Oregon.

Page 14  Complaint of the United States

68.     Accordingly, the Oregon DMV's confidential plate policy unlawfully regulates the Federal Government in violation of the Supremacy Clause and should be declared unconstitutional and invalid.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A.     That this Court enter a judgment declaring that Oregon's Driver and Motor Vehicle Services Division's policy of refusing to issue any registrations and license plates to federal agencies, while continuing to issue them to similarly situated state and local law enforcement agencies without restriction, violates the Supremacy Clause and is therefore invalid;

B.     That this Court enter a judgment declaring that Oregon's Driver and Motor Vehicle Services Division's policy of refusing to issue any confidential registrations and license plates to federal agencies, while continuing to issue them to similarly situated state and local law enforcement agencies without restriction, violates the Supremacy Clause and is therefore invalid;

C.     That this Court permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from denying federal agencies any plates, including confidential plates under this policy or Or. Rev. Stat. Ann. § 805.060(a);

C.     That this Court award the United States its costs and fees in this action; and

D.     That this Court award any other relief it deems just and proper.

Page 15  Complaint of the United States

DATED: May 27, 2026

SCOTT E. BRADFORD
U.S. Attorney
District of Oregon

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
TIBERIUS DAVIS
Counsel to the Assistant Attorney General

ALESSANDRA FASO
Senior Litigation Counsel

*/s/ Alexandra Schulte*
ALEXANDRA SCHULTE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 718-0483
alexandra.schulte@usdoj.gov


*Attorneys for the United States of America*

Page 16  Complaint of the United States