JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

MATTHEW F. MIMNAUGH (NJ BAR NO. 139342019)
EVAN W. SCHANERBERGER
Trial Attorneys
U.S. Department of Justice, Civil Division
Enforcement and Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF OREGON; TINA KOTEK, Governor of Oregon, in her official capacity; AMY JOYCE, DMV Administrator, in her official capacity.<br><br>Defendants. | **AMENDED COMPLAINT**<br><br>Case No.: 3:26-cv-1060 |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. The Constitution establishes that federal law is "the supreme Law of the Land." U.S. Const.

art. VI, cl. 2. Under that principle, states may neither discriminate against the Federal Government nor directly regulate the manner in which the Federal Government carries out its sovereign functions. *See United States v. Washington*, 596 U.S. 832, 836-40 (2022); *Mayo v. United States,* 319 U.S. 441 (1943). The Supreme Court and the United States Court of Appeals for the Ninth Circuit have long recognized that state laws and policies violating these principles are invalid under the Supremacy Clause. *See Washington*, 596 U.S. at 838-39; *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026) ("California I"); *United States v. California*, No. 26-296, 2026 WL 3071018, at *6-8 (9th Cir. Oct. 14, 2026) ("California II").

2. Federal law enforcement agencies operate throughout the United States enforcing federal law, including the immigration laws enacted by Congress. In carrying out those responsibilities, federal officers routinely investigate and apprehend dangerous criminals, including members of transnational criminal organizations, violent gangs, human traffickers, drug traffickers, fugitives, and other offenders. To conduct those operations safely and effectively, federal agencies rely on a variety of law enforcement tools, including undercover vehicle registrations and license plates that help protect the identities of officers, preserve operational security, and prevent investigative vehicles from being readily identified through public records or other means.

3. For decades, Oregon issued undercover license plates and registrations to federal law enforcement agencies pursuant to Oregon law. However, under a new policy in June 2026 and its implementing administrative rule in October 2026 (collectively, the "Challenged Policy"), Oregon abruptly ceased issuing undercover plates and registrations to Immigration and Customs Enforcement ("ICE") while continuing to issue the same plates and registrations to state, local,

and other federal law enforcement agencies.[1] Oregon has further taken the position that federal agencies need not receive Oregon-issued registrations or plates at all and instead should use conspicuous Federal Government plates that readily identify vehicles as belonging to the United States.

4. The Challenged Policy violates the Supremacy Clause in two independent respects. First, by denying federal agencies access to undercover registrations and license plates that remain available to similarly situated state and local law enforcement agencies, Oregon unlawfully discriminates against the Federal Government in violation of the doctrine of intergovernmental immunity. Second, by conditioning how federal agencies conduct law enforcement operations within Oregon and effectively requiring federal officers to identify themselves as federal agents when carrying out official duties, Oregon impermissibly regulates the manner in which the United States executes federal law.

5. The Challenged Policy is especially concerning because it interferes with the Federal Government's performance of core sovereign functions, including immigration enforcement and other congressionally authorized law enforcement activities. Decisions regarding how federal officers carry out those responsibilities belong to the Federal Government, not the States.

6. The United States therefore brings this action seeking declaratory and injunctive relief to prohibit Oregon from enforcing the Challenged Policy against the Federal Government, including ICE, to require Oregon to cease discriminating against ICE in the issuance of undercover

[1] Maldonado, "Oregon governor signs slew of bills protecting immigrants amid federal crackdown," Oregon Capital Chronicle (April 9, 2026), *available at* https://oregoncapitalchronicle.com/2026/04/09/oregon-governor-signs-slew-of-bills-protecting-immigrants-amid-federal-crackdown/ (last visited Nov. 10, 2026).

registrations and license plates, and to prevent Oregon from unlawfully regulating the manner in which the Federal Government performs its law enforcement functions.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

9. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

10. Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include, but are not limited to, the Department of Justice and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., ICE (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

11. Defendant Oregon is a state of the United States.

12. Defendant Tina Kotek is the Governor of Oregon and is being sued in her official capacity.

13. Defendant Amy Joyce is the Administrator of the Oregon Driver and Motor Vehicle Services Division (DMV) and is being sued in her official capacity.

## LEGAL AND FACTUAL BACKGROUND

### THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

14. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (2022) (citation omitted).

15. When state and federal law clash, the Supremacy Clause instructs courts to give federal law priority. *See M'Culloch v. State of Maryland, et al.* 17 U.S. 316, 360 (1819) (holding "states are prohibited from passing any acts which shall be repugnant to a law of the United States"). This principle was recently reaffirmed by the Ninth Circuit, which held that the Supremacy Clause prohibits states from directly regulating the Federal Government. *See California II,* 2026 WL 3071018, at *6-8 (holding the imposition of identification requirement on federal law enforcement officers violates the Supremacy Clause by "directly regulat[ing] inherently sovereign functions").

16. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

17. Federal law enforcement officers carry out their duties within the several States, including Oregon. *See Tennessee v. Davis*, 100 U.S. 257, 263 (1879).

18. DHS, through ICE and its component HSI, is principally responsible for enforcing the Nation's immigration laws, including the Immigration and Nationality Act (INA). *See Arizona v. United States*, 567 U.S. 387, 395 (2012).

19. The INA confers broad authority on the Executive Branch to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225-1229a, 1231. As part of those responsibilities, ICE, including HSI, conducts surveillance, investigative, and enforcement operations throughout Oregon, including investigations involving human smuggling, human trafficking, and transnational criminal organizations.

**OREGON'S CHALLENGED POLICY**

20. The Oregon Department of Transportation ("ODOT"), through DMV, is responsible for issuing vehicle registrations and license plates within Oregon.

21. Oregon law authorizes the ODOT to issue undercover registration plates to law enforcement agencies through the DMV which administers its undercover registration program. Specifically, Oregon may issue "registration plates or other evidence of registration from any regular series rather than from any specially designed government series for a vehicle operated by a federal, state, county, city or Indian tribal law enforcement, parole or probation agency in discharging its undercover criminal investigation duties if requested to do so by the agency." Or. Rev. Stat. (ORS) § 805.060(1).

22. For many years, Oregon issued undercover registrations and license plates to

federal law enforcement agencies pursuant to that authority.

23. On April 15, 2026, Oregon abruptly suspended the issuance of undercover registrations and license plates to all federal agencies pending a review of compliance with Oregon law. Oregon publicly acknowledged that the suspension applied only to federal agencies and that "[s]tate and local law enforcement are unaffected by this pause."[2]

24. Although Oregon characterized the April 2026 suspension as a temporary review, the State did not identify any date certain for completing that review or for resuming issuance of undercover registrations and license plates to federal agencies. As of May 27, 2026, when the United States filed its original Complaint in this action, Oregon had maintained the suspension for more than a month.

25. On June 1, 2026, Defendant Kotek announced a new policy (the "June Policy") under which Oregon would resume issuing undercover registrations and license plates to most federal agencies but would continue withholding such plates from ICE.

26. In announcing the new policy, Defendant Kotek stated that "ICE agents have repeatedly engaged in illegitimate activities, causing unwarranted chaos, sowing fear, and damaging the relationship between law enforcement and our communities." She further declared that "Oregon will follow state law and ensure we do not aid these unlawful immigration enforcement efforts."[3]

27. Defendant Kotek further asserted that "[m]asked and unidentified ICE agents,

---

[2] Nanungeri, "Oregon DMV review of undercover plates sparks clash with federal immigration enforcement," Central Oregon Daily News (May 18, 2026), *available at* https://www.centraloregondaily.com/news/regional/oregon-undercover-license-plates-federal-agencies-trump/article_264f7369-7751-4db4-8570-834175b6729c.html (last visited Nov. 12, 2026).

[3] Press Release, "Governor Kotek Directs Oregon DMV to Stop Issuing Undercover License Plates to ICE," Oregon Governor's Office (June 1, 2026), *available at* https://apps.oregon.gov/oregon-newsroom/OR/GOV/Posts/Post/governor-kotek-directs-oregon-dmv-to-stop-issuing-undercover-license-plates-to-ice (last visited Nov. 12, 2026).

operating in unmarked vehicles, have terrorized communities in Oregon and across the nation" and that Oregon's sanctuary law prohibits state and local agencies from participating "directly or indirectly in immigration enforcement without a judicial warrant." *See id.*

28. Consistent with those stated objectives, Defendant Kotek directed the DMV to "[c]ontinue withholding new undercover plates from ICE" while "[r]esum[ing] issuing plates to federal agencies that do not primarily conduct immigration enforcement and are not violating Oregon law." At the same time, Oregon would "[m]aintain regular undercover plate access for state and local law enforcement, which has continued and remains unaffected." *See id.*

29. As implemented, the June Policy specifically excludes ICE from Oregon's undercover-plate program while permitting continued participation by other federal agencies and by state and local law enforcement agencies. As Defendant Kotek explained, the purpose of the policy was to ensure that Oregon does "not aid" federal immigration enforcement efforts. *See id.*

30. On October 8, 2026, the Oregon DMV promulgated a temporary rule codifying the June Policy, effective from October 8, 2026 to April 5, 2027 (hereinafter the "October Rule"). *See* Oregon Administrative Rule (OAR) 735-040-0150; *see also* DMV 32-2026.[4] The October Rule requires a federal, state, county, city, or Tribal nation law enforcement agency seeking undercover license plates to certify that the vehicle "will be used exclusively for 'discharging undercover criminal investigation duties,' as authorized by ORS 805.060, and will not be used for any civil enforcement purpose." The October Rule further authorizes the DMV to cancel or refuse renewal of an undercover registration if the vehicle "is used for any purpose other than undercover criminal investigation duties as authorized by ORS 805.060." OAR 735-040-0150(1)(c), (3). By its terms, the October Rule excludes vehicles used for federal civil immigration enforcement, alone or in

[4] Oregon Department of Transportation, *available at* https://www.oregon.gov/odot/Get-Involved/OAR%20folders/2025-AONs/DMV_32-2026.pdf (last visited Nov. 12, 2026).

conjunction with other federal criminal enforcement efforts, from Oregon's undercover license plate program.

31. Under the terms of the Challenged Policy, vehicles used for federal civil immigration enforcement are excluded from Oregon's undercover registration program. As a result, ICE is ineligible to obtain undercover registrations and license plates that remain available to state and local law enforcement agencies and to other federal agencies.

**THE CHALLENGED POLICY IMPERMISSIBILITY REGULATES FEDERAL IMMIGRATION ENFORCEMENT**

32. Through the Challenged Policy, Oregon has conditioned access to its undercover license plate program on the nature of the federal law enforcement activity being conducted. Federal, state, and local law enforcement agencies engaged in undercover criminal investigations remain eligible to receive undercover registrations and license plates, while ICE may not obtain such plates for the performance of federal civil immigration enforcement activities. The Federal Government, not Oregon, possesses authority to direct and supervise the activities of federal officers and agencies. *See* 5 U.S.C. § 301; 28 U.S.C. § 509; 8 U.S.C. § 1103(a)(2); *California II*, 2026 WL 3071018, at *6-8.

33. Immigration enforcement is a core federal function committed to the Federal Government by the Constitution and federal law. *See Arizona v. United States*, 567 U.S. 387, 394-97 (2012).

34. By conditioning eligibility for undercover registrations and license plates on whether vehicles are used for federal immigration enforcement, Oregon seeks to dictate the manner in which ICE carries out its congressionally assigned duties. Rather than establishing a neutral registration program, Oregon has attempted to control the circumstances under which federal immigration officers may utilize undercover vehicles.

35. The Challenged Policy therefore directly regulates the operations of the Federal Government and interferes with the execution of federal law.

**THE CHALLENGED POLICY DISCRIMINATES AGAINST THE FEDERAL GOVERNMENT**

36. Under the Challenged Policy, state and local law enforcement agencies remain eligible to receive undercover registrations and license plates. Oregon also continues to issue undercover registrations and license plates to federal law enforcement agencies that do not primarily conduct immigration enforcement. Defendant Kotek specifically directed the DMV to resume issuing undercover plates to federal agencies other than those primarily engaged in immigration enforcement, while maintaining uninterrupted access for state and local law enforcement.

37. Agencies that remain eligible for Oregon's undercover registration program, including state, local, and many federal law enforcement agencies, use undercover vehicles to conduct surveillance, investigations, and other law enforcement activities that require operational anonymity. ICE, including its component HSI, similarly use undercover vehicles in carrying out federal law enforcement operations, including investigations involving human trafficking, human smuggling, transnational criminal organizations, and other violations of federal law.

38. Notwithstanding those similarities, Oregon has excluded ICE from the undercover registration program because ICE performs immigration enforcement functions.

39. The Constitution assigns the Federal Government authority over immigration and the Nation's borders, and federal law establishes a comprehensive and unified immigration enforcement system administered by the United States. *See Arizona v. United States*, 567 U.S. 387, 401-02 (2012). Therefore, Oregon's policy targets a uniquely federal function.

40. The Challenged Policy distinguishes among law enforcement agencies based on

whether they engage in federal immigration enforcement. By denying ICE access to undercover registrations and license plates that remain available to otherwise similarly situated state, local, and federal law enforcement agencies, Oregon treats the Federal Government less favorably because of its exercise of an exclusively federal responsibility. The Challenged Policy therefore discriminates against the Federal Government in violation of the Supremacy Clause and the doctrine of intergovernmental immunity. *See California II,* 2026 WL 3071018, at *7.

## THE CHALLENGED POLICY HARMS THE UNITED STATES

### A. Sovereign Injury

41. The Challenged Policy applies to the activities of a federal agency carrying out federal immigration enforcement responsibilities and targets federal law enforcement officers in the performance of their official duties. Such attempts to regulate and discriminate against the Federal Government constitute unconstitutional overreach under the Supremacy Clause. *See California I*, 173 F.4th at 1068.

42. The United States has a sovereign interest in administering federal law through its Executive agencies and officers.

43. The Challenged Policy affects the manner in which ICE obtains and uses vehicles for federal law enforcement activities within Oregon while discriminating against the Federal Government. Such a blatant violation of the Supremacy Clause "necessarily results" in "irreparable harm." *See California II*, 2026 WL 3071018 at *8.

44. The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Oregon. *See Hancock v. Train*, 426 U.S. 167, 180 (1976) (holding a state law or policy unlawfully regulates the United States when it "'places [either] a prohibition' or mandate on the federal government")

45. The United States therefore suffers an ongoing injury to its sovereign interests from the continued enforcement of the Challenged Policy.

**B. Injury to Federal Operations**

46. ICE, including HSI, relies upon undercover registrations and license plates to conduct law enforcement operations that require operational anonymity, including surveillance operations, undercover operations, fugitive investigations, sex-offender investigations, firearms-trafficking investigations, threat assessments, protective-intelligence operations, fraud investigations, drug investigations, counterterrorism operations, missing-person investigations, missing-child investigations, abduction investigations, task-force operations, and joint operations with state and local law enforcement agencies.

47. The Challenged Policy impairs those operations by depriving ICE of access to undercover registrations and license plates that Oregon continues to make available to other law enforcement agencies.

48. Many law enforcement operations depend upon discreet surveillance and inconspicuous vehicle movement. Undercover registrations and license plates assist officers in investigating, monitoring, and apprehending enforcement targets without unnecessarily revealing law enforcement presence.

49. If an investigative vehicle is identified as belonging to law enforcement, investigation subjects may alter their behavior, evade surveillance, destroy evidence, flee the jurisdiction, take countermeasures, or otherwise frustrate investigative objectives.

50. These risks are particularly significant during undercover operations, controlled purchases, surveillance operations, fugitive investigations, human-trafficking investigations, human-smuggling investigations, firearms-trafficking investigations, and other investigations

requiring operational anonymity.

51. Without access to undercover registrations and license plates, ICE may be required to modify, postpone, or forego operational activity that otherwise could be conducted using undercover vehicles.

52. Oregon's suggestion that ICE may instead utilize vehicles bearing Federal Government license plates misapprehends the attendant risks of such plates. Vehicles displaying Federal Government plates are more readily identifiable as federal vehicles than vehicles displaying undercover registrations issued through Oregon's undercover registration program.

53. Federal law enforcement personnel also routinely transport federal officials, federal judges, prisoners, witnesses, and other protected individuals. The ability to readily identify federal vehicles may compromise operational security measures that depend upon anonymity or unpredictability.

54. Undercover registrations further protect information concerning vehicle ownership and operational use by limiting public identification of participating law enforcement vehicles.

**C. Injury to Officer Safety**

55. Protecting the anonymity of federal officers and agents has become increasingly important because federal law enforcement personnel face heightened threats of harassment, intimidation, retaliation, and violence. These threats extend both to officers themselves and, in some instances, to members of their families.

56. Individuals increasingly photograph, record, and publish federal enforcement operations online. Such recordings are sometimes used to identify federal personnel and to facilitate harassment, tracking, interference with law enforcement activity, or other retaliatory conduct.

57. Publicly available information, social-media searches, facial-recognition tools, and officer-focused websites may be combined to identify individual officers and gather personal information concerning those officers and their families.

58. Once identified, officers may become targets of online harassment, stalking, threats, interference with official duties, or other forms of retaliation.

59. Federal law enforcement agencies have documented increased threats against federal officers, including threats directed at ICE personnel and other federal law enforcement officers engaged in carrying out their official responsibilities.

60. The increased threats and doxxing have affected officers and federal agents in Portland, Oregon, with ICE agents facing threats of physical harm against their families and death threats.[5] Anarchists and rioters have also illegally doxxed ICE agents.[6]

61. By reducing the ability of federal officers to operate investigative vehicles anonymously, the Challenged Policy increases risks associated with identification, targeting, monitoring, and harassment of federal personnel.

**D. Injury to the Public Interest and Public Safety**

62. Undercover registrations and license plates are an important public-safety tool because they allow law enforcement officers to conduct surveillance, undercover operations, and other sensitive investigations without prematurely alerting investigation subjects.

63. When law enforcement vehicles cannot operate anonymously, investigation subjects may detect surveillance, destroy evidence, flee the jurisdiction, evade apprehension, alter

---

[5] Press Release, "Portland Rioter Facing Criminal Charges After He Threatened to Kill ICE Officers and Sexually Assault their Wives," U.S. Department of Homeland Security (Dec. 2, 2025), *available at* https://www.dhs.gov/news/2025/12/02/portland-rioter-facing-criminal-charges-after-he-threatened-kill-ice-officers-and (last visited Nov. 10, 2026).

[6] Press Release, "Anarchists and Rioters in Portland Illegally Dox ICE Officers and Federal Law Enforcement," (July 11, 2025), available at https://www.dhs.gov/news/2025/07/11/anarchists-and-rioters-portland-illegally-dox-ice-officers-and-federal-law (last visited Nov. 10, 2026)

their behavior, or take countermeasures that increase risks to officers and members of the public.

64. These risks are particularly significant in investigations involving human trafficking, human smuggling, drug trafficking, firearms trafficking, fugitive apprehension, missing persons, missing children, and transnational criminal organizations, where operational anonymity may be necessary to protect victims and ensure successful enforcement actions.

65. State and local law enforcement agencies routinely work with federal law enforcement partners on investigations, task forces, public-safety operations, and emergency responses.

66. Federal agencies often provide specialized personnel, equipment, intelligence, investigative capabilities, and operational support that state and local agencies do not independently possess.

67. Operational restrictions that reduce the effectiveness of federal investigative activities may also reduce the ability of federal agencies to support state and local law enforcement partners.

68. Undercover vehicle registrations and license plates are one component of broader operational-security measures that assist federal agencies in conducting investigations safely and effectively.

69. The diminished effectiveness of investigations involving human trafficking, human smuggling, drug trafficking, firearms trafficking, fugitive apprehension, missing persons, and other public-safety threats may adversely affect the communities served by federal, state, and local law enforcement agencies.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE SUPREMACY CLAUSE (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

70. Plaintiff hereby incorporates all preceding paragraphs this Amended Complaint as if fully stated herein.

71. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

72. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly *or* discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)).

73. Under the Challenged Policy, state and local law enforcement agencies remain eligible to obtain undercover registrations and license plates. Oregon also continues to make undercover registrations and license plates available to federal law enforcement agencies that satisfy Oregon's certification requirements. ICE, however, remains ineligible to obtain undercover registrations and license plates under the Challenged Policy.

74. ICE, however, is categorically excluded from Oregon's undercover registration program. Under the Challenged Policy, Oregon continues to withhold undercover registrations and license plates from ICE while permitting participation by other federal, state, and local law enforcement agencies.

75. State, local, and federal law enforcement agencies eligible to participate in

Oregon's undercover registration program and ICE perform law enforcement functions that may require operational anonymity and the use of undercover vehicles. Oregon nevertheless denies ICE access to undercover registrations and license plates based on the agency's immigration enforcement mission.

76. By denying ICE access to undercover registrations and license plates that remain available to similarly situated state, local, and federal law enforcement agencies, Oregon treats an agency of the Federal Government less favorably than other participants in the undercover registration program.

77. The Challenged Policy therefore discriminates against the Federal Government in violation of the Supremacy Clause and the doctrine of intergovernmental immunity.

**COUNT II**

**VIOLATION OF THE SUPREMACY CLAUSE**
**(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

78. Plaintiff hereby incorporates all preceding paragraphs of this Amended Complaint as if fully stated herein.

79. Under the intergovernmental immunity doctrine, States may not directly regulate the United States or its instrumentalities absent congressional authorization. A state law or policy is invalid where it directly regulates federal operations, federal property, or the manner in which the Federal Government carries out its official functions.

80. As the Ninth Circuit recently explained, "if a state law directly regulates the governmental conduct of the United States without congressional authorization, it is void *irrespective of whether the regulated activities are essential to federal functions or operations*, and irrespective of the degree to which the state law interferes with such functions or operations." *California II,* 2026 WL 3071018 at *6 (emphasis added). Moreover, "[t]he burden of the regulation

on federal operations, whether substantial or otherwise, is irrelevant because ... there is no de minimis exception to the United States's immunity from direct regulation." *Id.* at *7.

81. The Challenged Policy directly regulates the activities of ICE, an agency of the United States charged with enforcing federal immigration laws.

82. The Challenged Policy further denies ICE access to or participation in Oregon's undercover registration program when carrying out immigration enforcement activities and instead requires ICE to utilize alternative vehicle-registration methods that do not provide the same operational anonymity available to other participants in the program.

83. Oregon has further conditioned participation in its undercover registration program on the nature of federal enforcement activities. OAR 735-040-0150 requires participating agencies to certify that vehicles receiving undercover registrations "will be used exclusively for 'discharging undercover criminal investigation duties'" and "will not be used for any civil enforcement purpose." The October Rule further authorizes DMV to cancel or refuse renewal of an undercover registration if the vehicle is used for purposes other than undercover-investigation duties. OAR 735-040-0150.

84. By conditioning eligibility for undercover registrations and license plates on how federal vehicles will be used, Oregon seeks to dictate the permissible uses of federal law enforcement vehicles and the circumstances under which federal officers may utilize undercover vehicles while carrying out their official duties.

85. By refusing to issue undercover registrations and license plates to ICE, Oregon regulates a core federal function by attempting to control the means and manner through which the Federal Government enforces federal immigration law.

86. The Challenged Policy therefore directly regulates the Federal Government in

violation of the Supremacy Clause and the doctrine of intergovernmental immunity.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests this Court:

A. Enter judgment declaring that the Challenged Policy discriminates against the Federal Government, and specifically against ICE, in violation of the Supremacy Clause and the doctrine of intergovernmental immunity;

B. Enter judgment declaring that the Challenged Policy unlawfully regulates the Federal Government and interferes with the performance of federal immigration enforcement functions in violation of the Supremacy Clause and the doctrine of intergovernmental immunity;

C. Permanently enjoin Defendants, their successors, officers, agents, servants, employees, attorneys, and all persons acting in concert with them from enforcing the Challenged Policy, or any successor policy, rule, or practice that denies the Federal Government access to or participation in Oregon's undercover license plate and registration program on the basis alleged herein;

D. Award the United States its costs in this action; and

E. Award any other relief the Court deems just and proper.

DATED: November 13, 2026

SCOTT E. BRADFORD
U.S. Attorney
District of Oregon

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

*/s/ Evan Schanerberger*
Evan Schanerberger

/s/ *Matthew F. Mimnaugh*
Matthew F. Mimnaugh
Trial Attorneys
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
matthew.f.mimnaugh@usdoj.gov
evan.w.schanerberger@usdoj.gov

*Attorneys for the United States of America*